ROSEMARY MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROANOKE MILLS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PATTERSON MILLS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8201, 9109, 9110.   Promulgated October 30, 1947.

*H. G. Hudson, Esq.,* and *John L. Elliot, C. P. A.,* for the petitioners. *Elmer M. Corbin, Esq.,* for the respondent.

OPINION.

Kern, *Judge*: A question has been raised with respect to the jurisdiction of this Court to consider questions incident to overassessments of taxes found by respondent in 1945 as follows:

|  | Tax | Year |
|---|---|---|
| Rosemary Mfg. Co | { Excess profits tax | 1940 |
|  | { Income tax | 1941 |
| Roanoke Mills Co | Excess profits tax | 1940 |
| Patterson Mills Co | { Excess profits tax | 1940 |
|  | { Income tax | 1941 |

The overassessments so found resulted from the application by respondent, as to the asserted tax liability of each petitioner, of amounts previously paid by each petitioner in connection with a tentative settlement proposed in 1943 but rejected by the Commissioner. It is thus petitioners' contention that, in reality, respondent determined a deficiency in those taxes so as to confer jurisdiction on this Court and that applying the payments made in connection with the proposed settlement does not deprive the Court of jurisdiction. They point out that in each case respondent, in effect, determined a liability for the tax in

question in excess of the amount shown on petitioners' original returns, and that the only payments which have been made by petitioners, other than payments made on the original returns, were those made in connection with the proposed, but rejected, tentative settlements.

Since the "deficiency," from the determination of which our jurisdiction stems, is a statutory term, it is necessary to inquire exactly what the statute definition provides. Section 271 of the Internal Revenue Code provides :

(a) IN GENERAL.—As used in this chapter in respect of a tax imposed by this chapter, "deficiency" means the amount by which the tax imposed by this chapter exceeds the excess of—

(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b) (2), made.

\* \* \* \* \* \* \*

It is stipulated that the petitioners, in February 1944, made such additional payments as were made (in addition to those made with original returns) as deficiencies assessed pursuant to waivers of restriction on assessment executed by petitioners in 1943. Section 272 (d), set out in the margin,[1] made it possible to collect these payments as deficiencies even though no formal notices of deficiency were mailed to petitioners pursuant to section 272 (a) (1). It therefore appears in these cases that the respondent did not in 1945 determine deficiencies, within the meaning of the statute, with regard to or as an incident to his finding of an overassessment of the taxes above referred to, since the taxes imposed by chapters 1 and 2 for each year were not in excess of the tax shown on the returns for the year plus the amounts later assessed as deficiencies, and we are without jurisdiction in the particular issues involved in these findings of overassessment.[2]

The remaining issues having to do with depreciation are greatly simplified by reason of the agreement of the parties with regard to most of the basic facts.

The petitioners make alternative contentions. Their primary contention is that section 734 of the Internal Revenue Code is applicable to the situation before us.

They urge that their incomes subject to taxation in 1940 and 1941, and particularly their incomes for those years subject to the excess profits tax, were computed by deducting from gross income an allow-

---

[1] (d) WAIVER OF RESTRICTIONS.—The taxpayer shall at any time have the right, by a signed notice in writing filed with the Commissioner, to waive the restrictions provided in subsection (a) of this section on the assessment and collection of the whole or any part of the deficiency.

[2] On brief petitioners state that no effort was made to obtain a refund of the amounts paid in 1944 because such an effort might be construed as an abandonment of "their inconsistent positions and their right to section 734 adjustments in any years."

ance for depreciation considerably less than the allowances for depreciation on the same assets deducted from gross income during the base period years 1936–1939, that consequently their excess profits credits (in effect, their average net incomes during the base period) were less and their excess profits taxes correspondingly greater than if the same rate of depreciation had been used in the taxable years and in the base period years, that equity and fairness demand a consistent treatment of similar items of deduction in both the base period and the subsequent taxable years (a treatment given in the proposed settlement referred to in our findings), and that such a consistent treatment is contemplated by chapter 2, subchapter E, of the Internal Revenue Code, and particularly by section 734.

This question, thus posed, requires us to examine with care the various provisions of chapter 2, subchapter E of the code.

Section 710 (a) (1), Internal Revenue Code, imposes a tax upon "the adjusted excess-profits net income, as defined in subsection (b), of every corporation." Subsection (b) provides that "adjusted excess-profits tax income" means the excess profits tax income (as defined in section 711) minus (among other things) "the amount of the excess profits credit under section 712." Section 712 provides that "the excess profits credit * * * shall be an amount computed under section 713 or section 714 * * *." Section 713 (which is pertinent to the instant proceedings) provides that "the excess profits credit * * * shall be * * * 95 per centum of the average base period net income as defined in subsection (d)." Subsection (d) provides that "for the purposes of this section the average base period net income of the taxpayer shall be the amount determined under subsection (e) * * *." Subsection (e) provides that the average base period net income shall be computed by averaging the excess profits net income for each of the taxable years of the taxpayer in the base period. Section 711 (b), (1) provides that "The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined by section 14 (a) of the applicable revenue law," subject to adjustments not here relevant. Normal tax net income and special class net income are both defined as net income subject to certain adjustments which are not in question in these cases.

In the instant cases the general question has to do with what amounts are to be used as the net income of each petitioner for each of the taxable years in its base period. Stated more specifically, the question is whether the net income of each petitioner for each of the taxable years in the base period should be computed by allowing as a deduction

from gross income an allowance on account of depreciation which was reasonable on the basis of facts known in each of those years, or an allowance which was reasonable on the basis of facts known, not in the taxable years of the base period, but in the first years in which the excess profits tax was imposed.

It is well established that for the purpose of computing net income subject to taxation under chapter 1 of the Internal Revenue Code, depreciation is to be calculated on the basis of facts known or reasonably to be anticipated during the taxable year and not upon facts subsequently discovered. *Lake Charles Naval Stores*, 25 B. T. A. 173; see Regulations 103, sec. 19.23 (1)–5. Our question is whether the same rule applies in computing the net income of petitioners during their base periods for the purpose of ascertaining their excess profits credits under subchapter E of chapter 2 of the Internal Revenue Code.

The excess profits tax provisions to which we have already called attention nowhere specifically require that the excess profits credit be computed under section 713 by the use of the net income figures used by the taxpayer in its returns for the taxable years in its base period. Section 734 of the Internal Revenue Code expressly contemplates that an item affecting the determination of the excess profits credit may be treated in a manner inconsistent with the treatment accorded such item in the determination of the income tax liability of the taxpayer in a prior taxable year.

Section 734 is entitled "Adjustment in Case of Position Inconsistent with Prior Income Tax Liability." Subsections (b), (c), and (d), which are pertinent to the instant proceedings are set out in the margin.[3]

---

[3] (b) CIRCUMSTANCES OF ADJUSTMENT.—
(1) If—
    (A) in determining at any time the tax of a taxpayer under this subchapter an item affecting the determination of the excess profits credit is treated in a manner inconsistent with the treatment accorded such item in the determination of the income-tax liability of such taxpayer or a predecessor for a prior taxable year or years, and
    (B) the treatment of such item in the prior taxable year or years consistently with the determination under this subchapter would effect an increase or decrease in the amount of the income taxes previously determined for such taxable year or years, and
    (C) on the date of such determination of the tax under this subchapter correction of the effect of the inconsistent treatment in any one or more of the prior taxable years is prevented (except for the provisions of section 3801) by the operation of any law or rule of law (other than section 3761, relating to compromises),

then the correction shall be made by an adjustment under this section. If in a subsequent determination of the tax under this subchapter for such taxable year such inconsistent treatment is not adopted, then the correction shall not be made in connection with such subsequent determination.

(2) Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the net effect of the adjustment would be a decrease in the income taxes previously determined for such year or years) or by the taxpayer with respect to whom the determination is made (in case the net effect of the adjustment would be an increase in the income taxes previously determined for such year or years) which position is inconsistent with the treatment accorded such item in the

In general, this section provides that if, in determining the excess profits tax liability of a taxpayer, an item is treated inconsistently with its treatment in the determination of the income tax liability of the taxpayer for a prior taxable year, and if the item were treated in the determination of the income tax liability of the prior year or years in a manner consistent with its treatment in ascertaining the excess profits tax liability of the taxpayer there would have been an increase

prior taxable year or years which was not correct under the law applicable to such year.

(3) BURDEN OF PROOF.—In any proceeding before the Board or any court the burden of proof in establishing that an inconsistent position has been taken (A) shall be upon the Commissioner, in case the net effect of the adjustment would be an increase in the income taxes previously determined for the prior taxable year or years, or (B) shall be upon the taxpayer, in case the net effect of the adjustment would be a decrease in the income taxes previously determined for the prior taxable year or years.

(c) METHOD AND EFFECT OF ADJUSTMENT.—

(1) The adjustment authorized by subsection (b), in the amount ascertained as provided in subsection (d), if a net increase shall be added to, and if a net decrease shall be subtracted from, the tax otherwise computed under this subchapter for the taxable year with respect to which such inconsistent position is adopted.

(2) If more than one adjustment under this section is made because more than one inconsistent position is adopted with respect to one taxable year under this subchapter, the separate adjustments, each an amount ascertained as provided in subsection (d), shall be aggregated, and the aggregate net increase or decrease shall be added to or subtracted from the tax otherwise computed under this subchapter for the taxable year with respect to which such inconsistent positions are adopted.

(3) If all the adjustments under this section, made on account of the adoption of an inconsistent position or positions with respect to one taxable year under this subchapter, result in an aggregate net increase, the tax imposed by this subchapter shall in no case be less than the amount of such aggregate net increase.

(4) In all the adjustments under this section, made on account of the adoption of an inconsistent position or positions with respect to a taxable year under this subchapter (hereinafter in this paragraph called the current taxable year), result in an aggregate net decrease and the amount of such decrease exceeds the tax imposed by this subchapter (without regard to the provisions of this section) for the current taxable year, such excess shall be subtracted from the tax imposed by this subchapter for each succeeding taxable year, but the amount of the excess to be so subtracted shall be reduced by the reduction in tax for intervening taxable years which has resulted from the subtraction of such excess from the tax imposed for each such year.

(d) ASCERTAINMENT OF AMOUNT OF ADJUSTMENTS.—In computing the amount of an adjustment under this section there shall first be ascertained the amount of the income taxes previously determined for each of the prior taxable years for which correction is prevented. The amount of each such tax previously determined for each such taxable year shall be (1) the tax shown by the taxpayer, or by the predecessor, upon the return for such prior taxable year, increased by the amounts previously assessed (or collected without assessment) as deficiencies, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax; or (2) if no amount was shown as the tax by such taxpayer or such predecessor upon the return, or if no return was made by such taxpayer or such predecessor, then the amounts previously assessed (or collected without assessment) as deficiencies, but such amounts previously assessed, or collected without assessment, shall be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax. There shall then be ascertained the increase or decrease in each such tax previously determined for each such year which results solely from the treatment of the item consistently with the treatment accorded such item in the determination of the tax liability under this subchapter. To the increase or decrease so ascertained for each such tax for each such year there shall be added interest thereon computed as if the increase or decrease constituted a deficiency or an overpayment, as the case may be, for such prior taxable year. Such interest shall be computed to the fifteenth day of the third month following the close of the excess profits tax taxable year with respect to which the determination is made. There shall be ascertained the difference between the aggregate of such increases, plus the interest attributable to each, and the aggregate of such decreases, plus the interest attributable to each, and the net increase or decrease so ascertained shall be the amount of the adjustment under this section with respect to the inconsistent treatment of such item.

or a decrease in the income taxes previously determined for those years, and if at the time of the determination of the excess profits taxes a correction of the effect of the inconsistent treatment in those prior years on the tax liability of the taxpayer is prevented by law, then such a correction, i. e., an increase or decrease in the income tax liability of the taxpayer for the prior years barred by the statute of limitations, shall be made by an adjustment of the excess profits tax either by way of increase or decrease. Subsection 734 (b) (2) provides by way of limitation that "such adjustment," i. e., the adjustment to the excess profits tax, "shall be made only if there is adopted in the determination," i. e., the determination of excess profits tax, "a position maintained by the * * * taxpayer * * * (in case the net effect of the adjustment would be an increase in the income taxes previously determined for such year or years) which position is inconsistent with the treatment accorded such item in the prior taxable year or years which was not correct under the law applicable to such year."

This subsection, it will be noted, is a limitation upon the making of the adjustment in the taxpayer's excess profits tax, and is not a limitation upon the treatment of an item affecting the income tax liability of a taxpayer for a prior year consistently with its treatment in determining the excess profits tax liability of that taxpayer.

During the base period years the petitioners and respondent were in agreement, reached after considerable negotiation, that a reasonable allowance on account of the depreciation of the assets here in question to be deducted from gross income was respectively an amount equal to $2\frac{1}{4}$ per cent, $2\frac{3}{4}$ per cent, and $3\frac{1}{4}$ per cent of the cost of such assets. Upon the record before us we are of the opinion, and have so found, that on the basis of facts known or reasonably to have been anticipated during those years the allowance thus computed and deducted was reasonable. For the years 1940 and 1941 respondent has determined that a reasonable allowance on account of the depreciation of these assets was respectively an amount equal to 1 per cent, 2 per cent, and 2 per cent of their cost. Upon the record before us we are unable to conclude that, on the basis of facts known or reasonably to have been anticipated during those years, respondent erred in his determination. Put in other words, we have concluded that the depreciation allowances properly deducted from gross income during the base period years for the purpose of computing the income tax liabilities of petitioners for those years were to be calculated on a useful life of the assets depreciated, estimated in the light of facts then known or reasonably to be anticipated of X years, while the depreciation allowances to be properly deducted during 1940 and 1941 were to be calculated for the purpose of ascertaining petitioners' tax liabilities for those years on a useful life estimated in the light of facts then known or reasonably to be anticipated of Y years.

We recognize that the apparent Congressional intent to be gleaned from an examination of the excess profits tax provisions of the code is that the correct net income of taxpayers for the base period be used in calculating their excess profits credits and that, where the correct figures for such net income are inconsistent with the figures used for computing the income tax liability of taxpayers for those years, then, under certain limitations and conditions, the excess profits tax computed by the use of the correct figures shall be adjusted in such a manner that the correct income taxes for the base period years shall be in effect collected.

However, we are not persuaded that in the instant cases the correct net income of petitioners during the base period years differed from the net income which they computed for income tax purposes by deducting from gross income an allowance for depreciation which was reasonable in those years. It may be that, in the absolute sense, the deductions for depreciation taken by petitioners were not correct in that in the light of subsequent events and facts then unknown and not reasonably to have been anticipated it eventuated that the useful life of the assets depreciated proved to be longer than the useful life then assumed for the purpose of computing the annual allowance for depreciation. But, in the relative sense, and the sense in which, under our annual system of computing income tax liability, the correctness of criteria for ascertaining income tax liability is judged, the deductions for depreciation taken by petitioners during the base period years were correct.

There is no provision in chapter 2 of the Internal Revenue Code which requires that items of deduction which may, under the law, fluctuate from year to year, dependent upon the facts existing, known, or anticipated during each year, be absolutely and mathematically the same in the base period years as in the subsequent years in which the excess profits tax is imposed. See *Carithers-Wallace-Courtenay*, 5 T. C. 942.

In *Zellerbach Paper Co.*, 8 T. C. 511, the net income of the taxpayer during the base period years, as computed and reported for income tax purposes, was not correct because by reason of a mistake of law and fact made during those years no deduction on account of the depreciation of a part of the taxpayer's property was taken, although under the law and on the facts known during those years such a deduction was proper. The distinction between that case and the instant cases is obvious. In these cases the deductions taken by petitioners on account of depreciation during the base period years were not in incorrect amounts computed under a mistake of law or a mistake of facts known or reasonably to be anticipated during those years.

We conclude that the net incomes of petitioners during the base period years may not now be adjusted or corrected under section 734 or any other provision of the code, since they were correct under the law and on the facts known, or reasonably to have been anticipated, during those years.

Petitioners' alternative contention is that the depreciation rates used by respondent in making his determinations of deficiency are contrary to law and the applicable regulations. Upon the record before us, we are of the opinion that petitioners' contention on this point is without merit.

*Decision will be entered for the respondent.*