Gus Blass Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 25663. Promulgated May 12, 1952.

E. *Charles Eichenbaum, Esq.*, for the petitioner.
E. G. *Sievers, Esq.*, and W. B. *Riley, Esq.*, for the respondent.

OPINION.

Rice, *Judge:* Respondent determined deficiencies in excess profits taxes for the taxable years ended January 31, 1943, 1944, and 1945, and a deficiency in declared value excess-profits tax for the taxable year ended January 31, 1944, as follows:

| Tax | Year ended | Liability | Assessed | Deficiency |
|---|---|---|---|---|
| Declared value excess-profits | 1/31/44 | $25, 515. 81 | $25, 424. 45 | $91. 36 |
| Excess profits | 1/31/43 | 167, 710. 27 | 159, 212. 86 | 8, 497. 41 |
| | 1/31/44 | 521, 502. 11 | 505, 217. 69 | 16, 284. 42 |
| | 1/31/45 | 588, 847. 18 | 573, 963. 27 | 14, 883. 91 |
| Totals | | $1, 278, 059. 56 | $1, 238, 393. 82 | $39, 665. 74 |

The sole issue is whether respondent used the proper opening and closing inventories in computing petitioner's net income for the base period years for the purpose of determining its excess profits credit for the fiscal years ended January 31, 1943, 1944, and 1945.

All of the facts were stipulated, are so found, and are incorporated herein.

Petitioner is an Arkansas corporation with its principal office in Little Rock, Arkansas, where it is engaged in business as a department store selling goods to the public at retail. Its income tax returns for all years here in question were filed with the collector of internal revenue for the district of Arkansas.

Prior to and including 1933, petitioner filed its income tax returns on a calendar year basis. Petitioner, with the permission of the Commissioner, was allowed to change to a fiscal year basis ending January 31; and its first fiscal year return was filed for a 1-month period ending January 31, 1934. Thereafter, petitioner has filed its returns for fiscal years ending January 31.

Prior to 1933, petitioner reported the value of its inventories for purposes of determining income on the basis of cost or market, whichever was lower. Neither freight nor purchase discounts (hereinafter referred to collectively as "freight") were included in its inventories in determining the cost thereof.

On January 22, 1934, petitioner requested permission to change to the retail method of inventory effective for the calendar year 1933, which permission was refused by the Commissioner by letter dated February 21, 1934, on the ground that the request was not timely filed. Such letter stated that consideration would be given to such request for the year 1934 upon receipt of further information.

Petitioner excluded freight as part of the cost in its opening and closing inventory for all of its fiscal year returns up to and including the return for the year ended January 31, 1936. Such action was reviewed and approved by a revenue agent for the returns for the year 1933 and the fiscal year 1934. For the fiscal years 1937 and 1938, petitioner included freight as part of the cost of both its opening and closing inventories in returning its net income for those years. Upon examination of these returns, the Commissioner adjusted the taxable income by excluding freight from the opening and closing inventories for each of those years. The following explanation of such action appeared in the revenue agent's report dated February 23, 1939:

In the 1936 fiscal year return the taxpayer eliminated from the inventories shown on the return the percentage of freight and purchase discount which was included in the book inventories—both items having been eliminated from the inventory on all returns from 1933 on. But in this year's return, and in the 1938 return, both items were included in the inventories used on the returns as well as on the book inventories, and if the amounts used were accepted it would mean that the taxpayer would have the advantage of a nontaxable restoration equal to the amount deducted from the closing 1936 inventory. Therefore, to be consistent the same items must be eliminated from the inventory now examined; * * *

For the fiscal years ending January 31, 1939, 1940, and 1941, freight was excluded from the opening and closing inventories in petitioner's income tax returns.

The return for the fiscal year ending January 31, 1940, was examined by a revenue agent; and on August 19, 1940, petitioner received the following notification in respect of such examination:

Upon examination of your income tax return for the year indicated above, the conclusion has been reached that it should be accepted as correct.

I am sure you will appreciate that should subsequent information be received which would materially change the amount reported, it will be necessary under existing laws to redetermine your tax liability.

The return for the fiscal year 1940 was reexamined in October 1942 at the same time that the return for the fiscal year ending January 31, 1941, was examined. Reference was made by the agent in his report to the manner in which inventories shown on the returns were computed, but no change was made in the method of computation.

For the fiscal year ending January 31, 1942, and all subsequent fiscal years, petitioner reported its taxable income by including freight in its opening and closing inventories.

Petitioner's returns for the fiscal years ending January 31, 1940, and 1941, were reexamined in March 1943, when the return for the fiscal year 1942 was examined. By the revenue agent's report dated April 5, 1943, petitioner was notified that its closing inventory for the fiscal year ending January 31, 1940, was increased in the amount of $17,786.82; that the opening inventory for the fiscal year 1941 was increased in the same amount; and that the closing inventory for the fiscal year 1941 was increased in the amount of $19,664.54. Such adjustments represented the cost of freight which had been excluded from such inventories in the returns. No adjustment was made for the opening inventory in the 1940 return. The following explanation of such adjustments appeared in the revenue agent's report and was made a part of the statutory notice of deficiency dated April 6, 1944, which was involved in *Gus Blass Co.*, 9 T. C. 15 (1947), petition to review dismissed (C. A. 8, 1948) 168 F. 2d 833:

In 1932* the taxpayer obtained permission from the Commissioner to change the pricing of its inventories to the retail method; in effecting the change the taxpayer added freight to the prices, and the inclusion of such freight was denied in the R. A. R. of that year for the reason that freight had not been considered in the opening inventory of the year of change. Adjustments were made on the returns of almost all of the following years for this freight item, and if such adjustment was not made on the return it was picked up in the R. A. R. on that year's return. Now, it is considered reasonable to increase income for this year so that troublesome adjustments can be eliminated, accordingly, income is increased by the closing adjustment shown in the prior R. A. R. on this year; see Ex. D of R. A. R. dated 10/24/42. [* Probably an error. The record would tend to indicate the year to be 1934.]

That notice of deficiency was for petitioner's fiscal years 1940 through 1942. No issue was raised, however, in such case with respect to the inventory adjustments. In the Rule 50 computation, all inventory adjustments were treated in the same manner as in the deficiency notice.

Petitioner's books at December 31, 1933, and at the end of each fiscal year since that date have reflected inventories with freight included as part of cost as follows:

| Date | Amount |
|---|---|
| Dec. 31, 1933 | $471,125.68 |
| Jan. 31, 1934 | 450,212.29 |
| Jan. 31, 1935 | 453,262.55 |
| Jan. 31, 1936 | 415,809.10 |
| Jan. 31, 1937 | 447,855.32 |
| Jan. 31, 1938 | 406,086.72 |
| Jan. 31, 1939 | 339,151.66 |
| Jan. 31, 1940 | 267,471.14 |
| Jan. 31, 1941 | 304,876.74 |
| Jan. 31, 1942 | 420,210.31 |
| Jan. 31, 1943 | 510,270.45 |
| Jan. 31, 1944 | 518,463.58 |
| Jan. 31, 1945 | 592,609.68 |

Exclusions of freight from the book inventories for tax purposes, whether made by petitioner or respondent, were reflected as surplus adjustments either in the tax returns or the revenue agent's reports.

Inventories, which were used by petitioner in computations of costs of goods sold for purposes of determining tax liability for various years, were as follows:

| Date | Amount |
|---|---|
| Dec. 31, 1933 | $438,801.55 |
| Jan. 31, 1934 | 419,312.50 |
| Jan. 31, 1935 | 424,707.01 |
| Jan. 31, 1936 | 389,696.29 |
| Jan. 31, 1937 | 420,536.15 |
| Jan. 31, 1938 | 381,234.22 |
| Jan. 31, 1939 | 316,530.25 |
| Jan. 31, 1940 | 267,471.14 |
| Jan. 31, 1941 | 304,876.74 |
| Jan. 31, 1942 | 420,210.31 |
| Jan. 31, 1943 | 510,270.45 |
| Jan. 31, 1944 | 518,463.58 |
| Jan. 31, 1945 | 592,609.68 |

In the deficiency notice of April 6, 1944, involved in 9 T. C. 15, *supra*, and in the Rule 50 computation in that proceeding, the following amounts were used as the values for opening and closing inventories for the computation of net income for the years indicated:

| Fiscal year ended | Opening inventory | Closing inventory |
|---|---|---|
| Jan. 31, 1940 | $316,530.25 | $267,471.14 |
| Jan. 31, 1941 | 267,471.14 | 304,876.74 |
| Jan. 31, 1942 | 304,876.74 | 420,210.31 |

In computing base period net income for the purpose of determining the excess profits credit, in his deficiency notice dated August 12, 1949, for the fiscal years now before the Court, the respondent used inventories which included freight at the beginning and end of the respective base period years, being the amounts reflected on petitioner's books as set forth in our table above. This correction of the inventories in said years resulted in a decrease in the excess profits credit

and a reduction in income tax liability for the base period years; and, under section 734 of the Internal Revenue Code,[1] in computing the

---

[1] SEC. 734. ADJUSTMENT IN CASE OF POSITION INCONSISTENT WITH PRIOR INCOME TAX LIABILITY.

     *         *         *         *         *         *         *

(b) CIRCUMSTANCES OF ADJUSTMENT.—

    (1) If—

        (A) in determining at any time the tax of a taxpayer under this subchapter an item affecting the determination of the excess profits credit is treated in a manner inconsistent with the treatment accorded such item in the determination of the income-tax liability of such taxpayer or a predecessor for a prior taxable year or years, and

        (B) the treatment of such item in the prior taxable year or years consistently with the determination under this subchapter would effect an increase or decrease in the amount of the income taxes previously determined for such taxable year or years, and

        (C) on the date of such determination of the tax under this subchapter correction of the effect of the inconsistent treatment in any one or more of the prior taxable years is prevented (except for the provisions of section 3801) by the operation of any law or rule of law (other than section 3761, relating to compromises),

then the correction shall be made by an adjustment under this section. If in a subsequent determination of the tax under this subchapter for such taxable year such inconsistent treatment is not adopted, then the correction shall not be made in connection with such subsequent determination.

    (2) Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the net effect of the adjustment would be a decrease in the income taxes previously determined for such year or years) or by the taxpayer with respect to whom the determination is made (in case the net effect of the adjustment would be an increase in the income taxes previously determined for such year or years) which position is inconsistent with the treatment accorded such item in the prior taxable year or years which was not correct under the law applicable to such year.

     *         *         *         *         *         *         *

(c) METHOD AND EFFECT OF ADJUSTMENT.—

    (1) The adjustment authorized by subsection (b), in the amount ascertained as provided in subsection (d), if a net increase shall be added to, and if a net decrease shall be subtracted from, the tax otherwise computed under this subchapter for the taxable year with respect to which such inconsistent position is adopted.

     *         *         *         *         *         *         *

(d) ASCERTAINMENT OF AMOUNT OF ADJUSTMENT.—In computing the amount of an adjustment under this section there shall first be ascertained the amount of the income taxes previously determined for each of the prior taxable years for which correction is prevented. The amount of each such tax previously determined for each such taxable year shall be (1) the tax shown by the taxpayer, or by the predecessor, upon the return for such prior taxable year, increased by the amounts previously assessed (or collected without assessment) as deficiencies, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax; or (2) if no amount was shown as the tax by such taxpayer or such predecessor upon the return, or if no return was made by such taxpayer or such predecessor, then the amounts previously assessed (or collected without assessment) as deficiencies, but such amounts previously assessed, or collected without assessment, shall be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax. There shall then be ascertained the increase or decrease in each such tax previously determined for each such year which results solely from the treatment of the item consistently with the treatment accorded such item in the determination of the tax liability under this subchapter. To the increase or decrease so ascertained for each such tax for each such year there shall be added interest thereon computed as if the increase or decrease constituted a deficiency or an overpayment, as the case may be, for such prior taxable year. Such interest shall be computed to the fifteenth day of the third month following the close of the excess profits tax taxable year with respect to which the determination is made. There shall be ascertained the difference between the aggregate of such increases, plus the interest attributable to each, and the aggregate of such decreases, plus the interest attributable to each, and the net increase or decrease so ascertained shall be the amount of the adjustment under this section with respect to the inconsistent treatment of such item.

deficiency in excess profits tax for the fiscal year 1943, respondent allowed a credit in the amount of the overpaid income taxes for all of the base period years plus interest thereon.

The real issue in the case is not whether respondent correctly applied section 734 in making such adjustment, but whether respondent correctly adjusted petitioner's inventories for the base period years in computing the excess profits credit, thereby giving rise to the adjustment provided for by section 734. We must, therefore, consider for purposes of determining the excess profits credit whether the method employed by petitioner in reporting its income for the base period years was incorrect as maintained by respondent or was correct as argued by petitioner so that no adjustment may now be made.

Regulations 111, sec. 29.22 (c)–3, states in part that "cost" as it applies to inventories means:

* * * the invoice price less trade or other discounts, except strictly cash discounts approximating a fair interest rate, which may be deducted or not at the option of the taxpayer, provided a consistent course is followed. To this net invoice price should be added transportation or other necessary charges incurred in acquiring possession of the goods.

Section 41 of the Internal Revenue Code provides that income shall be reported by a taxpayer in accordance with the method of accounting regularly employed in keeping the books of such taxpayer unless the method does not clearly reflect the income. In the latter case, the computation shall be made in accordance with a method which, in the opinion of the Commissioner, does clearly reflect such income. Where the method of reporting income does not clearly reflect the income of the taxpayer, distinction has been made between those cases in which the books of the taxpayer clearly reflect the income of the taxpayer and those cases in which it does not. If the books do clearly reflect the income, no change in the method of accounting is required but merely a change in the method of reporting income. *Commissioner* v. *Mnookin's Estate* (C. A. 8, 1950), 184 F. 2d 89, affirming 12 T. C. 744 (1949); *Robert G. Frame*, 16 T. C. 600 (1951), affd. (C. A. 3, 1952) 195 F. 2d 166; *Commissioner* v. *Schuyler* (C. A. 2, 1952) 196 F. 2d 85.

In the *Mnookin* case, the Court of Appeals said: "The taxpayer's method of accounting will control the time as of which income must be reported and deductions allowed. The courts hold that neither income nor deductions may be taken out of the proper accounting period for the benefit of the Government or the taxpayer." [p. 92]. Since the books of petitioner clearly reflected income as it should have been reported, under the rationale of the above-cited cases and under the facts of this case, exclusion of freight from opening and

closing inventories in reporting income for taxation purposes was incorrect. Such freight charges should have been included in opening and closing inventories for the base period years, and respondent erred when he refused to allow inclusion of freight in the returns filed by petitioner for the fiscal years 1937 and 1938. He also erred in the adjustment made in the 1940 return where he included freight as part of the closing inventory but excluded it from the opening inventory thereby giving a distortion of income for the year 1940.

Such adjustment in the income tax liabilities for the base period years is barred by the statute of limitations, but respondent is not prevented from making such adjustment in order correctly to compute the excess profits credit applicable to the years before us, which adjustment is merely the correction of an error made in the base period years. *Leonard Refineries, Inc.*, 11 T. C. 1000 (1948). See also *Rosemary Manufacturing Co.*, 9 T. C. 851 (1947).

Once such adjustment is made, the concomitant adjustments required by section 734 of the Code come into play; and respondent's action in decreasing the excess profits tax liability for petitioner's fiscal year 1943 by an amount equal to the overpayments in income tax for the base period years plus interest thereon was correct. *Zellerbach Paper Co.*, 8 T. C. 511 (1947). See *Rosemary Manufacturing Co., supra*.

We hold that respondent did not err in recomputing petitioner's income for the base period years to determine petitioner's excess profits credit where the method employed for reporting such income was erroneous under the Code and under our cases.

*Decision will be entered for the respondent.*