**BULOVA WATCH COMPANY, Inc.,**
v.
**UNITED STATES.**
No. 629–53.

United States Court of Claims.
July 16, 1958.

Bernard Weiss, New York City, for plaintiff.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen., Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

MADDEN, Judge.

The plaintiff sues to recover income and excess profits taxes for its fiscal years 1942 through 1946. The principal asserted basis for recovery has to do with the way in which deductions for bad debts were treated in computing the plaintiff's taxes.

During the years 1931 through 1934 the plaintiff seems to have had a policy of pushing sales regardless of the credit of the purchasers. Some 13½ percent of its accounts proved uncollectible and bad debt deductions from taxable income were taken for them. On March 31, 1935, the plaintiff, under the applicable provision of section 23(k) of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 673, set up a reserve for bad debts instead of deducting specific bad debts for each year. The initial reserve was $333,716.44 which was approximately 13½ percent of the plaintiff's accounts and notes receivable at the time the reserve was set up. The revenue agent allowed a deduction from income of only $291,135.23, which was 12½ percent of the plaintiff's trade notes and accounts receivable.

In fact, in the fiscal year 1935 during which the $291,135.23 deduction was allowed, the plaintiff's actual bad debt losses were only $58,952.67. This was because economic conditions were better and a new credit manager was more careful in extending credit.

Under the reserve for bad debts arrangement, if, after the reserve is set up, the taxpayer's accounts receivable at the end of the next fiscal year have increased, it is allowed to add to the reserve a proper percentage of the increase, and take as a bad debt deduction for that year the sum representing that reasonable percentage of the increase. That addition to the bad debt reserve in fiscal year 1936 was $116,103.70, the Commissioner having reduced the allowable percentage from 12½ to 10.

During the fiscal years 1937, 1938, and 1940 the plaintiff's receivables increased each year, and the plaintiff set up on its books a proportionate addition to its reserve for bad debts and was allowed to deduct from its taxable income a somewhat smaller amount, viz. 10 percent of the increase, which amount the revenue agent regarded as sufficient. In the fiscal year 1939 the plaintiff's receivables decreased, hence there was a subtraction from its bad debt reserve of a percentage of the decrease, and the amount so subtracted from the reserve was, presumably, added to its taxable income. In all of these years the plaintiff's actual losses from bad debts were nowhere near the amounts added to its bad debt reserve and deducted from its income.

As we shall see, when the Excess Profits Tax statute was passed in 1940, it fixed upon certain years, for this plaintiff the fiscal years 1937 through 1940, as the "base period" years, and the taxpayer's taxable income in those years became retroactively important in computing its excess profits taxes during the war years.

For the fiscal year ending March 31, 1941, the Commissioner of Internal Revenue did not allow any deduction from taxable income nor any addition to the bad debt reserve because the existing unused reserve seemed ample in the light of the plaintiff's actual bad debt experience. The plaintiff, commenting in 1943 on this disallowance, claimed that the reserve was inadequate and should have been increased. The Commissioner took no exception, in any regard here relevant, to the plaintiff's returns for 1942 and 1943.

In 1945 the plaintiff asserted its present claim that it should not have been al-

lowed to take the unrealistically large bad debt deductions from its income during the years 1935 to 1940. The obvious reason for this change of position was that those years included the base period years specified in the excess profits tax statute, and the smaller one's taxable income was during those years, the more of his profits during the war years were "excess profits," taxable at high rates. If, therefore, the plaintiff's deductions for bad debts during the base period years had been only the actual amount of its bad debt losses, or the amount which it now says was a reasonable reserve for bad debts, its taxable income during those years would have been larger, and its war time taxable income would not have been so greatly in "excess" of it.

The plaintiff says that the provisions of section 734 of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 734, authorize it to reconstruct its base period taxable income. The title of that section is "Adjustment in case of position inconsistent with prior income tax liability." The section, particularly its subsection (b) (1) (A), says that if an item affecting the determination of the excess profits tax credit is treated in a manner inconsistent with its treatment in the determination of the income tax liability of the taxpayer for a prior taxable year or years, then the income tax treatment for the prior taxable year or years should be reopened and recomputed, though the prior year or years would otherwise be foreclosed from reexamination.

The meaning of the statute is by no means clear. The plaintiff asserts that the Commissioner, in denying the plaintiff the right to make any further addition to its bad debt reserve in the fiscal year 1941 and thereafter, was "inconsistent" with his allowance of the original setting up of the reserve in 1935 and of the additions to it in the succeeding years prior to 1941. The Government says that the disallowance in 1941 was not a rejection of the plan of a reserve for bad debts, but was a recogni-

tion of the fact that the reserve was already large enough to cover such losses for the year 1941 and some years thereafter.

In Leonard Refineries, Inc., 11 T.C. 1000, the taxpayer claimed depreciation as a deduction in the excess profits tax years 1943 and 1944. It asserted that it had taken excessive depreciation in a base period year and thereby used up its depreciation allowance, but that it should not thereby be prevented from taking proper depreciation in the later years. The Tax Court held that the taxpayer had taken excessive depreciation in the base period year; that it had the right to take proper depreciation in the excess profits tax years; that if it did so, it was required by section 734 to go back and recompute its deductions for depreciation in prior years and pay its taxes for those years according to the recomputation. The result must have been that the taxpayer's base period income was increased, its income in the war years had less "excess" in it, and it got the depreciation deduction in the war years when the tax rates were high.

In Leonard Refineries the only "inconsistency" was instigated by the taxpayer itself, admitting and asserting that it had taken an improper deduction in a base period year. The Commissioner was not raising the question and could not have raised it because the prior years were foreclosed by the statute of limitations. The Tax Court's interpretation of section 734 seems to have been that it gave a taxpayer, when it was subjected to the high excess profits tax rates, an opportunity to take a second look at what it had done during the years which were later designated as the base period years, and correct the erroneous computations which it had made during those years, if it would be to its advantage to do so. American Pad & Textile Co., 16 T.C. 1304, is in accord with Leonard Refineries. Carithers-Wallace-Courtenay, 5 T.C. 942; Rosemary Manufacturing Co., 9 T.C. 851; The Kawneer Co., 13 T.C. 336; and Gus Blass Co., 18 T.C. 261, support

the doctrine of Leonard Refineries, at least by inference.

The interpretation given to section 734 by the Tax Court in Leonard Refineries is justified by the legislative history of the section. That history shows that the section was a relief measure designed to prevent the hardships and inequalities which would otherwise result, if a corporate taxpayer was not permitted, when computing its excess profits credit, to show its "true income" for the base period years and thus be required to pay excess profits tax rates only upon those profits which were, in fact, excessive. [87 Cong.Record pp. 1372–3, 1377, 77th Cong., 1st Sess.] Section 11 of H.R. 3531, which ultimately became section 734, was explained on the floor of Congress as follows:

"Page 28, section 11, provides for adjustment in case of inconsistent positions. This allows for adjustments during the base period as to income and amounts reported for income taxes. It will be remembered that the present law bases the credit on the amount of the normal tax net income for the corporation during the base period. It does not provide for the amount of income as reported on the corporation's income-tax report, but it provides for the income during the years of the base period. As an illustration, assume that a corporation reported on its income-tax return for one of the years of the base period $100. Now, it comes along when it wants to show as large an amount as it can during the base period for excess-profits tax purposes, and says, 'My income for a certain year during the base period was not $100, as was reported, but it was $175, and, therefore, I want the advantage of $175 in that year of the base period for excess-profits tax purposes.' This provision says to the corporation, in effect, 'Very well. You may go back and make that adjustment, but you must pay the income tax for the difference between what you reported and what you now say you made during that year of the base period plus interest.'" [87 Cong.Record pp. 1380–81, 77th Cong., 1st Sess.]

An example cited in the committee reports accompanying H.R. 3531 further supports the view that Congress intended, by the terms of what is now section 734, to give taxpayers this benefit of hindsight in computing their excess profits credit. [H.Rept. 146, pp. 17–18, 77th Cong., 1st Sess.; S.Rept. 75, pp. 17–18, 77th Cong., 1st Sess.]

■ During the base period years the plaintiff was allowed to take bad debt deductions of 10 percent of its receivables. Its actual bad debt losses ranged from .37 of one percent to 1.13 percent. Under all the facts and circumstances of this case, we conclude that the deductions were grossly excessive and erroneous under the general principles governing the reasonableness of such reserves and additions thereto. Black Motor Co., 41 B.T.A. 300; Mill Factors Corp., 14 T.C. 1366; Paramount Liquor Co. v. Commissioner, 8 Cir., 1957, 242 F. 2d 249. The plaintiff should have been required to limit its deductions to its actual losses, or to a reserve amount which bore a reasonable relation to its loss experience. We think section 734 gives the plaintiff the privilege of recomputing its income and income tax for the prior years, and its excess profits tax credit for the excess profits tax years.

■ The plaintiff claims that the cost of a burglar alarm system installed by it in the year ended March 31, 1940, which was taken as a deduction in that year, should have been capitalized and made the subject of depreciation over a number of years. For the reasons elaborated in connection with the bad debt claim, we think the plaintiff's contention is valid.

■ The plaintiff makes a similar claim with regard to legal fees paid by it in 1937 in connection with the retirement of its preferred stock. It took a deduction for these fees in the year ended

March 31, 1937. It now says that it should have capitalized them. That would have been the proper method of accounting for them. The plaintiff is not asserting a right to do anything with these fees in the excess profits tax years, since they would not be a subject of depreciation. But section 734(b) (1) seems to be broad enough to allow the recomputation even in this situation.[1] This is an item which affects "the determination of the excess profits credit," and the plaintiff says it should not have been taken as a deduction from income in the base period year, though it was so taken. This constitutes the necessary inconsistency. The Tax Court decision in The Kawneer Co., supra, seems to be to that effect. See also the legislative history cited above.

In its return for the fiscal years 1942 and 1943, the plaintiff included in its taxable income amounts which had been charged on its books to its bad debt reserve, but which it in those years transferred on its books, apparently to surplus. The amount so returned as income in those two years was somewhat in excess of the amount actually allowed to the plaintiff as bad debt deductions in prior years. If there were to be no recomputation of income and taxes, the plaintiff would seem to have overstated its income for 1943 by the amount of this excess. Since, under our decision, there will be a recomputation, this problem will be solved in the recomputation.

The plaintiff is entitled to recover, with interest as provided by law. The amount of the judgment will be determined in further proceedings had pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and LARAMORE and LITTLETON, Judges, concur.

1. "§ 734. \* \* \* (b) *Circumstances of adjustment.—*
   "(1) If—
   "(A) in determining at any time the tax of a taxpayer under this subchapter an item affecting the determination of the excess profits credit is treated in a manner inconsistent with the treatment accorded such item in the determination of the income-tax liability of such taxpayer or a predecessor for a prior taxable year or years, and
   "(B) the treatment of such item in the prior taxable year or years consistently with the determination under this subchapter would effect an increase or decrease in the amount of the income taxes previously determined for such taxable year or years, and

   "(C) on the date of such determination of the tax under this subchapter correction of the effect of the inconsistent treatment in any one or more of the prior taxable years is prevented (except for the provisions of section 3801 [I.R.C. 1939]) by the operation of any law or rule of law (other than section 3761, [I.R.C.1939] relating to compromises),

   then the correction shall be made by an adjustment under this section. If in a subsequent determination of the tax under this subchapter for such taxable year such inconsistent treatment is not adopted, then the correction shall not be made in connection with such subsequent determination."